IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SALVADOR SEGOVIA, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | Case No. 4:23-CV-00122 |
| B.H. 211 FM 1960, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW, SALVADOR SEGOVIA, JR., by and through the undersigned counsel, and files this, his Complaint against Defendant, B.H. 211 FM 1960, LLC, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2. Plaintiff, SALVADOR SEGOVIA, JR. (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3. Plaintiff is disabled as defined by the ADA.

4. Plaintiff is required to traverse in a wheelchair and is substantially limited in

performing one or more major life activities, including but not limited to: walking and standing.

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. Her motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.      Defendant, B.H. 211 FM 1960, LLC (hereinafter "B.H. 211 FM 1960, LLC"), is a California limited liability corporation that transacts business in the State of Texas and within this judicial district.

8.      Defendant, B.H. 211 FM 1960, LLC, may be properly served with process for service via its Registered Agent, to wit:  c/o First Corporate Solutions, Inc., Registered Agent, 3610-2 Josey Lane, Suite 223, Carrollton, TX  75007.

## FACTUAL ALLEGATIONS

9.      On or about November 30, 2022, Plaintiff was a customer at "Crafty Crab," a business located at 211 Cypress Creek Parkway, Houston, TX  77090, referenced herein as "Crafty Crab".    Attached is a photograph documenting Plaintiff's visit to the Property. *See* Exhibit 1. Also attached is a copy of the receipt documenting Plaintiff's purchases as a customer

at the Crafty Crab on November 30, 2022.  *See* Receipt attached as Exhibit 2.

10.    Defendant, B.H. 211 FM 1960, LLC, is the owner or co-owner of the real property and improvements that Crafty Crab is situated upon and that is the subject of this action, referenced herein as the "Property."

11.    Plaintiff lives 12 miles from the Property.

12.    In addition to wanting to return to the Crafty Crab as a customer, Plaintiff would also desire to return to the Property to be a customer of Lasagna House III but is currently dissuaded from doing so due to the continuing barriers to access at the Property which make it difficult and dangerous for Plaintiff to traverse the Property.

13.    Furthermore, this Property also contains the closest Harris County Public Health Department station to Plaintiff's residence.

14.    Plaintiff's access to the business(es) located 211 Cypress Creek Parkway, Houston, TX   77090, Harris County Property Appraiser's property identification number: 1385630010001("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant, B.H. 211 FM 1960, LLC, is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

15.    Defendant, B.H. 211 FM 1960, LLC, as property owner, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, B.H. 211 FM 1960, LLC and the tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only

between the property owner and the tenant and does not abrogate the Defendant's independent requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations.  *See* 28 CFR § 36.201(b).

16.    Plaintiff has visited the Property at least once before as a customer and advocate for the disabled.  Plaintiff intends on revisiting the Property within six months after the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer, to determine if and when the Property is made accessible and for Advocacy Purposes.

17.    Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer living in the near vicinity as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

18.    Plaintiff travelled to the Property as a customer and as an independent advocate for the disabled, encountered the barriers to access the Property that are detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at the Property.

19.    Although Plaintiff did not personally encounter each and every barrier to access identified in Plaintiff's Complaint, Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the complaint in a subsequent visit as,

for example, one accessible parking space may not be available and he would need to use an alternative accessible parking space in the future on his subsequent visit. As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

20.     Plaintiff's inability to fully access the Property and the stores within in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

21.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

22.     Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)   discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)    individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

23.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

        * * * * *

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

24.     The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

25.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

26.     The Property is a public accommodation and service establishment.

27.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

28.     Public accommodations were required to conform to these regulations by January

26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

29.     The Property must be, but is not, in compliance with the ADA and ADAAG.

30.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

31.     Plaintiff intends to visit the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

32.     Defendant, B.H. 211 FM 1960, LLC, has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

33.    Defendant, B.H. 211 FM 1960, LLC, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, B.H. 211 FM 1960, LLC, is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

34.    A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

   i.    In front of Unit 211D, the two accessible parking spaces and associated access aisles have a running slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

   ii.    In front of Unit 211D, the access aisle has Sections with a cross slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to enter and exit the vehicle as a level surface is needed so the wheelchair does not tip over and injure Plaintiff as excessive cross-slopes

increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

iii.     Nearest Unit 217A, the ground surfaces of one of the accessible spaces have a sewer drain that creates surfaces that have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 502.4, 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.

iv.     Nearest Unit 217A, the accessible parking space has cross slopes in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to enter and exit the vehicle as a level surface is needed so the wheelchair does not tip over and injure Plaintiff as excessive cross-slopes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

v.     In front of Lasagna House, due to an inadequate policy of parking lot maintenance or a lack thereof, there are two accessible parking spaces that are not adequately marked so as to adequately gauge the width of accessible parking spaces and the presence of an access aisle and is therefore in violation of Sections 502.1 and 502.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space and may cause other vehicles to unknowingly park in the accessible parking space decreasing the available width to Plaintiff.

vi.   In front of Lasagna House, one of the two accessible parking spaces is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

vii.   In front of Lasagna House, the access aisle adjacent to the accessible parking space has a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

viii.   Nearest Lasagna House, the Property has an accessible ramp leading from the accessible parking spaces to the accessible entrances with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured.

ix.   In front of Unit 1960, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

10

x.   In front of Unit 1960, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xi.   In front of Unit 1960, the access aisle adjacent to the accessible parking space has a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

xii.   In front of Unit 1960, the access aisle has cross slopes in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to enter and exit the vehicle as a level surface is needed so the wheelchair does not tip over and injure Plaintiff as excessive cross-slopes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

xiii.   In front of Unit 1960, the access aisle has a vertical rise in excess of ¼ inch and is in violation of Sections 303.2 and 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as well as

make it difficult for Plaintiff to travel to the public accommodations offered at the Property as the vertical rise could cause the tire of the wheelchair to get snagged or impede movement.

xiv.    In front of the entrance to Unit 221E, two of the four accessible parking spaces is not located on the shortest distance to the accessible route leading to the accessible entrances, due to the lack of a nearby accessible ramp, in violation of Section 208.3.1 of the 2010 ADAAG Standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the units of the Property from these accessible parking spaces as the far location increases the likelihood of traversing into the vehicular way and getting struck by a vehicle or encountering a barrier to access which stops Plaintiff from accessing the public accommodations offered at the Property.

xv.    In front of the entrance to Unit 221E, the two accessible parking spaces referenced in (xiii) do not have a marked access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards. This barrier to access makes it nearly impossible for an individual in a wheelchair to enter and exit their vehicle at this accessible parking space due to the close presence of parked vehicles on either side of the accessible parking space not providing enough room for the wheelchair, this eliminates the accessible route from this accessible parking space.

xvi.    In front of the entrance to Unit 221E, the two accessible parking spaces referenced in (xiii) lack an accessible route from the accessible parking spaces to the accessible entrance of the Property, due to the lack of an access aisle, in

violation of Section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

xvii.   In front of the entrance to Unit 221E, due to an inadequate policy of parking lot maintenance or a lack thereof, the four accessible parking spaces are not adequately marked so as to adequately gauge the width of accessible parking spaces and the presence of an access aisle and is therefore in violation of Sections 502.1 and 502.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space and may cause other vehicles to unknowingly park in the accessible parking space decreasing the available width to Plaintiff.

xviii.  In front of Unit 221A, the access aisle adjacent to the accessible parking space has a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

xix.    In front of Unit 221A, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xx.    In front of Unit 221A, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xxi.    In front of Unit 221A, the Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured.

xxii.    In front of Unit 221A, the access aisle has vertical rises in excess of ¼ inch and is in violation of Sections 303.2 and 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as well as make it difficult for Plaintiff to travel to the public accommodations offered at the Property as the vertical rise could cause the tire of the wheelchair to get snagged or impede movement.

xxiii.    In front of Unit 221A, the accessible parking space has a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff

to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

xxiv. In front of Unit 221A, the accessible parking space has a cross slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to enter and exit the vehicle as a level surface is needed so the wheelchair does not tip over and injure Plaintiff as excessive cross-slopes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

xxv. Nearest Unit 211H, the access aisle to the two accessible parking spaces is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xxvi. Nearest Unit 211H, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking spaces in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xxvii. Nearest Unit 211H, due to a gap in the pavement revealing an opening of about an inch between the accessible ramp and the accessible route, the

ground surfaces of the accessible route have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.

xxviii.    In front of Crafty Crab, one of the two accessible parking spaces is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

xxix.    In front of Crafty Crab, the two access aisles have unlevel surfaces in violation of Sections 303.2 and 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as well as make it difficult for Plaintiff to travel to the public accommodations offered at the Property as the vertical rise could cause the tire of the wheelchair to get snagged or impede movement.

xxx.    In front of Crafty Crab, the access aisles serving the two accessible parking spaces are not at the same level as the parking space it serves in violation of Section 502.4 of the 2010 ADAAG Standards.  This barrier to access would make it difficult for Plaintiff to exit and enter their vehicle if parked at that accessible parking space.

xxxi.    In front of Crafty Crab, for the two accessible parking spaces, there is a vertical rise in excess of ¼ inch at the threshold of where the spaces meet their

associated access aisles and are in violation of Sections 303.2 and 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as well as make it difficult for Plaintiff to travel to the public accommodations offered at the Property.

xxxii.    In front of Unit 235, the access aisle to the accessible parking spaces is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xxxiii.    In front of Unit 235, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking spaces in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xxxiv.    In front of Unit 235A, the access aisle to the accessible parking spaces is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

17

xxxv.    In front of Unit 235A, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking spaces in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xxxvi.    The Property lacks an accessible route from the sidewalk near Crafty Crab to the accessible entrances of the Property in violation of Section 206.2.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to utilize public transportation to access the public accommodations located on the Property.

xxxvii.    Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

35.    The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

36.    Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

37.    The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

38.     All of the violations alleged herein are readily achievable to modify to the Property into compliance with the ADA.

39.    Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

40.    Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, B.H. 211 FM 1960, LLC, has the financial resources to make the necessary modifications.  According to the Property Appraiser, the collective Appraised value of the Property is $5,881,404.00.

41.    The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction from the IRS for spending money on accessibility modifications.

42.    Upon information and good faith belief, the Property has been altered since 2010.

43.    In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

44.    Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, B.H. 211 FM 1960, LLC, is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

45.    Plaintiff's requested relief serves the public interest.

46.    The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, B.H. 211 FM 1960, LLC.

47.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, B.H. 211 FM 1960, LLC, pursuant to 42 U.S.C. §§ 12188 and 12205.

48.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, B.H. 211 FM 1960, LLC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant, B.H. 211 FM 1960, LLC, in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendant, B.H. 211 FM 1960, LLC, from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendant, B.H. 211 FM 1960, LLC to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e)    That the Court grant such further relief as deemed just and equitable in light of the

circumstances

Dated: January 12, 2023

Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com